UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


TRUSOUTH OIL, LLC                          CIVIL ACTION NO. 11-cv-0493
                                           (Consolidated with 11-cv-1256)

VERSUS

BURLINGTON INSURANCE CO., ET AL       MAGISTRATE JUDGE HORNSBY


**MEMORANDUM RULING**

**Introduction**

      TruSouth Oil, LLC ("TruSouth") bought a petroleum product from PetroTech Energy,

LLC ("PetroTech") and used it to make hydraulic fluid, which it then sold to various

customers.  PetroTech changed the formula for its product but did not tell TruSouth.

Customers who used TruSouth's hydraulic fluid began reporting problems with their

equipment. TruSouth investigated and learned that PetroTech had changed its formula to

include bio-oil, which some experts insist is not suitable for use in hydraulic fluid.  TruSouth

filed suit in state court against PetroTech and its insurer for various damages.   The

defendants removed the case based on diversity jurisdiction.

      Before the court are motions for partial summary judgment filed by PetroTech that

attack TruSouth's claims under Louisiana's Unfair Trade Practices Act (Doc. 63), based on

redhibition and warranty (Doc. 66), based on the Louisiana Products Liability Act (Doc. 67),

and for negligence (Doc. 65).  The court's review of the evidence shows that there are several

genuine issues of material fact, so the motions that attack the redhibition and trade practices

claims will be denied. The negligence and products claims are alternative claims that no longer appear necessary, so the motions that attack them will be granted.

**Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a).  A fact is "material" if it might affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986).  A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party.  Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of genuine issue of material fact.  Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

The court will consider all of the evidence in the record but must "refrain from making credibility determinations or weighing the evidence."  Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007).  All reasonable inferences must be drawn in favor of the party opposing the motion.  Martin v. Spring Break '83 Productions, L.L.C., 688 F.3d 247 (5th Cir. 2012).

**Relevant Facts**

PetroTech's business includes purchasing used oils, subjecting them to various treatments, and then selling the oil to other companies. One of those companies is TruSouth, which manufactures petroleum-based products that include lubricants, motor oils, and hydraulic fluids.  PetroTech sold oil to TruSouth from the middle of 2009 until the fall of 2010.

TruSouth presents testimony that from "day one" PetroTech knew that TruSouth would be using the product it bought from PetroTech to manufacture hydraulic fluid.  An insurance application completed by PetroTech around the time these events happened described its operations as purchasing contaminated, off specification, and surplus oils, reclaiming the oils by various means, and marketing the oil, "which is typically utilized by compound lubricant blending companies as a cost reducing base stock in their economy hydraulic oil blends."

From October 2009 through May 2010, PetroTech sold TruSouth an oil product, which the parties sometimes called the "old blend," that TruSouth used successfully to make its hydraulic fluid product.  This old blend was 100% petroleum-based.  PetroTech provided TruSouth with samples, which TruSouth could test before a shipment was delivered.

PetroTech made a change in June 2010 by replacing one component of the old blend with a "bio-based" product known as tall oil, which is derived from trees and is not petroleum-based.  This new formulation became known as the "New June Blend." TruSouth's expert testifies that bio-oil absolutely cannot be used in hydraulic oils and that

there is not a single manufacturer in the country that does so.  PetroTech submits testimony that suggests it is possible to make a successful hydraulic fluid with the New June Blend, using certain additives, but a TruSouth expert disagrees and testifies the needed additives have been off the market for years. There is at least a genuine issue of fact on that point. PetroTech filed a Motion to Strike (Doc. 113) an affidavit and test results offered by TruSouth relevant to this issue, but the arguments surrounding the motion to strike reveal even more factual disputes about matters such as the propriety of the tests run and the availability of the additive. The motion to strike will be denied.

PetroTech provided TruSouth a sample of the New June Blend, as was the practice with each shipment, but it did not tell TruSouth that it had changed the formula.  At the same time, PetroTech began including on its invoices a statement that it "specifically makes no conditions or warranties expressed or implied, of merchantability, fitness, or suitability for a particular purpose or otherwise."  It added: "All merchandise is sold  'as is'."  PetroTech states that this change was made at the recommendation of an insurance auditor, but there is evidence that the advice was received several months before the new language appeared. The appearance of the new language at precisely the same time as the change in formulation, together with the other circumstances, could allow a reasonable juror to draw an inference that PetroTech added the language because it had concerns about the effect the change in formula would have on its customers and their products.

There is also evidence that PetroTech had an outside lab test for oxidation stability in the New June Blend before it shipped any of the product to TruSouth.  The results are

described as unacceptable, but PetroTech never mentioned the results to TruSouth.  Another area of concern with the change in formula is that tall oil is high in fatty acids.  TruSouth's chemist testifies that the New June Blend had a high total acid number ("TAN"), which causes oxidation instability.  When TruSouth began receiving customer complaints, it contacted PetroTech's president Gary Hensley and asked about the TAN.  Hensley first stated that he was not familiar with that issue, but he called about two hours later and said he had found paperwork in PetroTech's records that showed a high TAN in the New June Blend.

The dozens of tank trucks of oil that TruSouth bought were each accompanied by a Material Safety Data Sheet ("MSDS").  Some witnesses described the MSDS as being required for transportation regulations and safety, and so that a person exposed to the contents of the shipment will have information about it.  When PetroTech changed the formula and began shipping the New June Blend, it did not change the MSDS to identify the shipment as containing bio-oil, and it now admits that it should have done so.  On the other hand, it appears the MSDS was provided after TruSouth received a sample that it could test, and it is questionable whether TruSouth did or could reasonably have relied on the MSDS for deciding whether the oil was suitable for making its hydraulic fluid.

**Warranty and Redhibition Claims**

TruSouth asserts a claim in redhibition.  Louisiana law provides that a seller warrants the buyer against redhibitory defects or vices in the thing sold.  A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that the buyer

would not have bought the thing had he known of the defect.  La. Civ. Code art. 2520.  The thing sold must be reasonably fit for its ordinary use.  When the seller has reason to know the particular use the buyer intends for the thing, and that the buyer is relying on the seller's skill or judgment in selecting it, the thing sold must be fit for the buyer's intended use or his particular purpose.  Art. 2524.  But the seller owes no warranty for defects that were known to the buyer at the time of the sale or that should have been discovered by a reasonably prudent buyer of such things.  Art. 2521.

TruSouth witnesses have testified that PetroTech officials knew that TruSouth intended to make hydraulic fluid with the oil it bought from PetroTech.  Jay Adams testified that PetroTech knew that TruSouth required a naphthenic product.  And there is also evidence, as discussed above, that bio-oils are unsuitable for producing hydraulic fluid.  There is, therefore, a genuine issue of material fact as to whether PetroTech knew TruSouth intended to use the oil to manufacture hydraulic fluid and that TruSouth was relying on PetroTech to sell a product that was fit for that intended use.

PetroTech argues that TruSouth could have easily discovered the problem by proper testing.  Factors to be considered in determining whether an inspection is reasonable include the knowledge and expertise of the buyer, the opportunity for inspection, and assurances made by the seller.  Also relevant would be the cost, availability, and timeliness of the testing that would have revealed the presence of the undesirable aspects of the New June Blend.  Determining what is reasonable in what the parties admit is a relatively new and developing area of business is not possible, as a matter of law, on this record.  It is an issue that must be

determined by the jury after a review of all of the relevant evidence, including any customs or practices of similarly situated buyers in the industry.

PetroTech argues that the "as is" language added to its invoice at the time of the formula change operated as a waiver of TruSouth's claims in redhibition.  Civil Code Article 2548 provides that the parties may agree to an exclusion or limitation of the warranty, but "[t]he terms of the exclusion or limitation must be clear and unambiguous and must be brought to the attention of the buyer."  There is evidence that Kory LeBlanc, a TruSouth official, initialed the invoices that were sent several days after the actual shipments.  His initials usually appear in the middle of the page, not near the "as is" language at the bottom. There is not undisputed evidence that the terms of the purported waiver were brought to the attention of TruSouth, either verbally, in writing, or by the size, location, or other characteristics of the new language.  And Louisiana courts have stated that even where the waiver is sufficient as to form and to attract the attention of the purchaser, it may not be effective where the seller knew or should have known of the defect and failed to declare it. Boos v. Benson Jeep-Eagle Co., Inc., 717 So.2d 661, 665 (La. App. 4th Cir. 1998).  A seller with knowledge of a defect who, rather than informing the buyer of the defect, opts to obtain a waiver, commits fraud that vitiates the waiver because it is not made in good faith.  Id.  It may be that the additional language was added coincidentally at the time of the change in formula, but reasonable inferences can be drawn that there was a connection and that any waiver was not obtained in good faith.  Various credibility assessments and weighing of the evidence, which summary judgment does not permit, are required to determine those issues.

PetroTech repurchased several tank loads of New June Blend after TruSouth complained of its unsuitability, but a great deal of the oil had already been used by TruSouth to make hydraulic fluid, so it could not be returned. With respect to the several deliveries that were used by TruSouth, PetroTech argues that the sale of that oil cannot be rescinded, leaving TruSouth with a claim only for reduction of the purchase price.

A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for return of the price with interest, reimbursement of reasonable expenses occasioned by the sale, and also for damages and reasonable attorney fees.  La. Civ. Code art. 2545.  The article adds that a seller is deemed to know that the thing he sells has a redhibitory defect when he is the manufacturer of that thing.  There is, as discussed above, a genuine issue of material fact as to what PetroTech knew about the impact that its change of formula would have on its oil.  The extent of the remedy available to TruSouth, if it were to prevail, is not susceptible to a definitive ruling on the summary judgment record.

## Unfair Trade Practices Act

The Louisiana Unfair Trade Practices Act, La. R.S. 51:1405 et seq., makes "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful.  A practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious.  Fraud, deceit, and misrepresentation may constitute deceptive practices, but the statute does not specifically define what is or is not within that category, and the determination must be made

by the courts on a case-by-case basis.  <u>NOLA 180 v. Treasurer Chest Casino, LLC</u>, 91 So.3d 446, 449 (La. App. 5th Cir. 2012).

PetroTech argues that it was not unethical for it to rely on TruSouth to test the samples PetroTech provided to ensure the fitness of the oil for the intended purpose.  PetroTech adds that it is unreasonable to believe that PetroTech would deliberately sabotage its primary customer.  On the other hand, there is evidence that would allow a reasonable juror to draw an inference that PetroTech knew that its addition of the tall oil to the New June Blend might make it unsuitable for the manufacture of hydraulic fluid, that PetroTech knew TruSouth intended to use the oil to make hydraulic fluid, and PetroTech elected to not disclose the change in formula but, rather, attempt to obtain a waiver of any warranty by adding language to its invoice that it did not draw to the attention of TruSouth.  PetroTech may be able to present evidence at trial that persuades a jury not to draw any of those inferences and that it acted honestly and without knowledge of the impact the addition of the tall oil would have, but the court may not weigh the evidence and decide those facts on summary judgment. TruSouth has presented enough evidence to overcome the motion, and these issues will simply have to be resolved after a jury hears and assesses the evidence.

**Negligence and Products Liability**

PetroTech has filed motions for summary judgment that attack TruSouth's claims based on negligence and the Louisiana Products Liability Act ("LPLA").  TruSouth responds that to the extent its claims are "covered under Louisiana redhibition law, TruSouth intends to make no claims sounding in negligence or products liability." Doc. 90. Those claims are

said to have been offered only as alternative causes of action.  The court found above that TruSouth is entitled to proceed with its redhibition claim.

The LPLA "establishes the exclusive theories of liability for manufacturers for damages caused by their products." La. R.S. 9:2800.52.  The statute defines "damage" as all damage caused by a product  itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that the Civil Code redhibition article do not allow recovery for such damage or economic loss. La. R.S. 9:2800.53(5). Thus, generally, economic loss claims by buyers fall under redhibition, and personal injury claims fall under the LPLA. Other theories of liability, such as negligence, are not available.

Given TruSouth's representations about the alternative nature of these claims, and the likelihood that the items of damages TruSouth seeks are available if it prevails in redhibition, it seems the claims are unnecessary. Under these circumstances, the court will grant summary judgment with respect to the negligence and LPLA claims.

If PetroTech takes the position that any damages claimed by TruSouth fall within the scope of the LPLA rather than redhibition, they must communicate that assertion promptly to the court and TruSouth. The court will then establish a schedule for resolving any such dispute and deciding whether to revive the LPLA claim. Otherwise, the case will proceed with the redhibition and Unfair Trade Practice Act claims.

 **Conclusion**

Many of the key facts are squarely contested by competing testimony, and some key decisions, such as what disclosures a seller in the relevant industry should make or what tests

a buyer reasonably should perform, call for a more thorough assessment and weighing of the evidence regarding what the parties admit is a new and developing industry. On many of the issues, credibility determinations will be paramount.

PetroTech's Motions for Partial Summary Judgment (Doc. 63) [Unfair Trade Practices Act] and (Doc. 66) [redhibition], as well as its Motion to Strike (Doc. 113) are denied. Its motions for partial summary judgment (Doc. 67) and (Doc. 65) are granted, and all claims for negligence and based on the LPLA are dismissed.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of September, 2012.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE